**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SHANTOY PITTER,

                   Plaintiff,

     v.

TARGET CORPORATION, et al.,

                Defendants.

No. 1:20-CV-183
(MAD/CFH)

---

**APPEARANCES:**          **OF COUNSEL:**

SHANTOY PITTER
1401 6th Street SE
Apt. 408
Minneapolis, Minnesota 55414
Plaintiff pro se

## REPORT-RECOMMENDATION AND ORDER

### I. In Forma Pauperis

Plaintiff pro se Shantoy Pitter ("plaintiff") commenced this action on February 20, 2020, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, she submitted a motion to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP motion and determines that she may properly proceed IFP.[1]

---

[1] Plaintiff is advised that although she has been granted IFP status, she is still required to pay any fees and costs she may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Initial Review

### A. Legal Standard

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  However, this does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each

> defense other than a denial – must be stated in a
> separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of

identification for referring to a particular paragraph in a prior pleading[.]"  Flores,

189 F.R.D. at 54 (internal quotation marks and citations omitted).  A complaint

that fails to comply with the pleading requirements "presents far too a heavy

burden in terms of defendants' duty to shape a comprehensive defense and

provides no meaningful basis for the Court to assess the sufficiency of their

claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the

Second Circuit has held, "[w]hen a complaint does not comply with the

requirement that it be short and plain, the court has the power, on its own

initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42

(2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved

for those cases in which the complaint is so confused, ambiguous, vague, or

otherwise unintelligible that its true substance, if any, is well disguised."  Id.

(citations omitted).  In such cases of dismissal, particularly when reviewing a pro

se complaint, the court generally affords the plaintiff leave to amend the

complaint.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).  A court

should not dismiss a complaint if the plaintiff has stated "enough facts to state a

claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

## B. Plaintiff's Complaint[2]

Liberally construing plaintiff's complaint to raise the strongest arguments it suggests, plaintiff alleges discrimination on the basis of sex, retaliation, and hostile work environment based on sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York State Human Rights Law ("NYSHRL"); and disability discrimination and failure to provide reasonable accommodations in violation of the Americans with Disabilities Act of 1990 ("ADA"),[3] 29 U.S.C. § 621 *et seq.* and the NYSHRL. See Compl. at 13 ¶¶ 64, 74; 16 ¶¶ 78; 17 ¶¶ 91-92; 21 ¶¶ 107, 109; 22 ¶ 117; 23 ¶ 119; 25 ¶ 149. Plaintiff also alleges that Target violated New York Labor Law § 195(6). See id. at 9 ¶ 41. In addition, plaintiff alleges that defendants committed breach of contract by violating the implied covenant of good faith and fair dealing

---

[2] Because of plaintiff's pro se status, the undersigned has considered the allegations in the complaint along with the documents attached thereto. See, e.g., Anthony v. Murphy, No. 5:15-CV-00450 (DNH/TWD), 2015 WL 1957694, at *1 n.1 (N.D.N.Y. Apr. 28, 2015) ("[I]n light of [the p]laintiff's pro se status, the Court has considered the allegations in, and attachments to, both [the p]laintiff's original and amended/supplemental complaints upon its initial review."), report and recommendation adopted, No. 5:15-CV-450 (DNH/TWD), 2015 WL 3409261 (N.D.N.Y. May 27, 2015).

[3] Although plaintiff's complaint explicitly asserts a disability discrimination claim pursuant to the New York State Human Rights Law ("NYSHRL") only, and does not specifically cite 29 U.S.C. § 621 *et seq.*, she contends that Target discriminated against her and denied her reasonable accommodations based on her alleged disability; therefore, it is clear that she is attempting to replicate the Americans with Disabilities Act ("ADA") claim she asserted before the Equal Employment Opportunity Commission ("EEOC"). See Dkt. No. 1-1 at 13-15 (Plaintiff's Rebuttal to Target's Position Statement asserting a disability discrimination claim pursuant to the ADA). Accordingly, the undersigned construes plaintiff's complaint as asserting a disability discrimination claim pursuant to the ADA and the NYSHRL.

under New York law.  See id. at 24 ¶ 133.  Plaintiff names as defendants her former employer, Target Corporation ("Target"); supervisors at Target's Wilton, New York, warehouse, Michael D'Aloia ("D'Aloia") and Samantha Muller ("Muller"); Target Human Resources employee at Target's Wilton, New York, location, Michelle Partlow ("Partlow"); and Target employees at the Wilton, New York, warehouse, Matthew Permaul ("Permaul") and Brandon Lee ("Lee").  See id. at 1.

Plaintiff, a woman, alleges that she was employed by Target at its warehouse facility in Wilton, New York, between March 13, 2018, and December 15, 2018, where she worked full time as a warehouse worker and forklift driver. See Compl. at 3-4 ¶ 12.  Plaintiff states that, when she was first hired and being trained, "male co-workers would make fun of her.  For example, in March 2018," plaintiff alleges that non-party Nick Ecuyer ("Ecuyer") asked plaintiff to "hang out after work," which made plaintiff "uncomfortable."  Id. at 4 ¶ 13.  After plaintiff declined to see Ecuyer after work, he "became mean to [p]laintiff" and told her "that her leggings were too tight" and "that she was boring," "liked attention," "wore leggings because she wanted all the guys to look at her behind," and that "she was a cat lady[] and that she should knit him a sweater."  Id.  Ecuyer also "ordered [p]laintiff up and down the stairs" and "stood there laughing as [p]laintiff called for help" when a jam occurred on the assembly line in March 2018.  Id. at ¶¶ 13-14.  Other coworkers, including non-parties Dan Hickok ("Hickok") and Cody Duell ("Duell"), also laughed at plaintiff, which caused plaintiff to cry.  See

id. at 5 ¶ 13.  Moreover, plaintiff states that "[d]uring [her] training," Eucyer and D'Aloia "watched [her] as she was working, laughing back and forth with each other, and then the other male co-workers join [sic] them and all laughed at [p]laintiff." Id. at 4 ¶ 13.  In addition, plaintiff states that non-party "Hickok referred to [p]laintiff as 'garage.'" Id. at ¶ 15.

Plaintiff alleges that non-party "Bruce Ward told [p]laintiff in Target's parking lot, that [D'Aloia] told him that '[p]laintiff should suck his D . . . .'" Compl. at 5 ¶ 15.  Further, plaintiff states that, on an unspecified day in "May 2018, [D'Aloia] . . ., stared at [p]laintiff's chest, and made unwelcome sexual comments about [p]laintiff's appearance.  [He] did this almost every time [p]laintiff would report to work.  On numerous occasions, when [p]laintiff would bend over the conveyor, D'Aloia would appear from nowhere behind [p]laintiff." Id. at ¶ 17.  On another unspecified day in May 2018, plaintiff alleges that, while she was "unloading a trailer by [her]self, [she] turned around and was surprised that [D'Aloia] was just there, standing and watching [her]." Id.  Plaintiff contends that D'Aloia "repeated the same behavior and acts several times," " never missed an opportunity to put his hands on [p]laintiff's back and shoulders," and that "[t]he first time [p]laintiff had a conversation with [D'Aloia], he looked at [p]laintiff's in the face [sic] while briefly touching her shoulder with his hands." Id. at 6 ¶ 17.

Plaintiff states that, "[o]n May 30, 2018, [she] reported all of the above, all offensive [sic], degrading, and humiliating comments made, and behaviors of co-

workers Ecuyer, Isaac [Namtrah ("Namtrah")],[4] [Hickok], [and D'Aloia] to Target's [HR] employee . . . Partlow."  Compl. at 6 ¶ 19.  However, plaintiff alleges, "Target did not take any action because [p]laintiff continued to be a victim of the harassment from co-workers, and especially from . . . D'Aloia."  Id.  Further, plaintiff alleges that, in June 2018, after making her HR report, D'Aloia "made a comment" that the "leggings [plaintiff] wore at work . . . would cause a human resources complaint," to which plaintiff "replied that she was more comfortable in leggings rather than jeans."  Id. at ¶ 20.  In addition, plaintiff alleges that, on a separate occasion in June 2018, while speaking with plaintiff, D'Aloia "put his hand on [p]laintiff's lower back to move [her] out of the way" of a forklift; however, plaintiff states that she "was not in the forklift's way."  Id. at 6-7 ¶ 21.  Moreover, plaintiff alleges that, on August 10, 2018, Bruce Ward told plaintiff that "Namtrah . . . and . . . Duell . . . were walking behind [p]laintiff, trying to read [her] underwear through her black leggings."  Id. at 7 ¶ 23.  On an unspecified date in August 2018, plaintiff alleges that, "after [she] was injured on the job, [she] went to HR to see if she could be accommodated and work overtime while injured."  Id. at 7 ¶ 22.  Plaintiff states that D'Aloia noticed that she was upset and "grabbed [her] shoulders [and] stat[ed] that everything would be fine, and that he would speak to [Partlow] in the HR."  Id.  Plaintiff states that when "[D'Aloia] came back" he told her "to go home and patted [her] on her back."  Id.  Plaintiff avers that,

---

[4] Isaac Namtrah is not a party.

"[d]uring the month of August 2018, [D'Aloia] was sexually harassing other female employees of Target, and had been investigated."  Id. at 8 ¶ 26.  She posits that "Target took appropriate actions for the other females' harassment, but never took any actions concerning [her] complaints made on [D'Aloia] and other co-workers."  Id.

Plaintiff alleges that "on or about April 15, 2018, [she] was hurt on the line" when she "reached out wither left arm to grab" "a box containing four bleach bottles" and "immediately felt a sharp pain, but continued to work."  Compl. at 7 ¶ 24.  "On or about August 6, 2018, [p]laintiff re-injured her left side once more during a yoga class after work."  Id. at 8 ¶ 25.  She reported her injury to workers' compensation.  See id.  "On August 13, 2018, plaintiff suffered a chest muscle strain while working."  Id. at ¶ 27.  Target's doctor, Dr. Thomas Williams, "completed Target's Accommodation Questionnaire and restricted [p]laintiff to light duty for the following two weeks."  Id.; see Dkt. No. 1-2 at 1-2.  "On August 17, 2018," non-party "Sedgwick [Claims Management Services, Inc.], Target's workers' compensation claims administrator [informed p]laintiff that Target would handle the workers' compensation process" and, "[o]n August 20, 2018, the New York State Workers' Compensation Board sent a notice stating that it had opened a case for the matter."  Compl. at 8-9 ¶¶ 29, 30.

Plaintiff states that, "[o]n or around October 27, 2018, . . . Lee . . . reprimanded [p]laintiff for 'accountable time,' knowing that [p]laintiff was dealing with a work-related injury."  Compl. at 9 ¶ 31; see Dkt. No. 1-2 at 10.  "On or

9

about November 12, 2018, . . . Muller . . . issued [p]laintiff an Extended Period for Unacceptable Performance Corrective Action," which required plaintiff "to meet certain criteria or . . . face discipline, including termination.  Muller knew that [p]laintiff was dealing with a work-related injury."  Id. at ¶ 32; see Dkt. No. 1-2 at 10-11.  In his Counseling for Unacceptable Work Performance citation, Lee indicated that plaintiff "failed to initiate and sustain the necessary improvements in response to the feedback [she] ha[d] received" on October 27, 2018, including that she had "continued [her] negative trend by coming in late to [her] scheduled shift on October 31, 2018," and indicated that plaintiff needed to improve on the following: "[r]emain[ing] in her work area and avoid[ing] unnecessary downtime," "[a]rriv[ing] to all shifts on time," "[m]aintain[ing] focus on [her] job responsibilities," "[r]efrain[ing] from wandering away from [her] work area when [she] should be working," and "[f]ollowing proper call-in process."  Dkt. No. 1-2 at 10.

"On November 28, 2018, [p]laintiff requested reason [sic] accommodation but was denied when Muller confronted [her] about 'accountable time,' and stated that [p]laintiff did not meet subjective criteria set forth on November 12, 2018 [sic] warnings."  Compl. at 9 ¶ 33.  "On December 1, 2018, [p]laintiff injured her back at work.  She returned to the doctor and was diagnosed with a lumbar strain. Plaintiff was advised to be on light duty until December 5, 2018."  Id. at ¶ 34; see Dkt. No. 1-2 at 17 (Malta Med Emergent Care report dated December 2, 2018, diagnosing plaintiff with lumbar strain and recommending light duty until

December 5, 2018).  Plaintiff states that she "was ruled partially disabled as of

December 1, 2018."  Id.  On December 3, 2018, a Target Workability Form was

completed for plaintiff's December 1, 2018 injury, which indicated that plaintiff

had sustained a lower back strain and was capable of returning to work with the

following limitations: no lifting, carrying, pushing, pulling, or bending at the trunk.

See Dkt. No. 1-2 at 21.  The Target Workability Form stated that plaintiff would

return to the clinic on December 19, 2018.  See id.

"On December 9, 2018, Muller and Permaul issued [p]laintiff[] another

Extended Period for an Unacceptable Performance Corrective Action," which

stated that, "[a]s a result of [plaintiff's] poor performance, [she was] being issued

this Final Warning for Unsatisfactory Work Performance."  Dkt. No. 1-2 at 13; see

Compl. at 10 ¶ 37.  The December 9, 2018 warning indicated that, "[d]espite . . .

conversations and [the November] corrective action, [plaintiff] ha[d] continued

[her] negative trend by coming to start-up late on 11/13, 11/20 and 11/27."  Dkt.

No. 1-2 at 13.  "On December 15, 2018, Target terminated [p]laintiff's

employment."  Compl. at 11 ¶ 41.  Plaintiff alleges that she "was not provided a

letter of termination within five days of her termination."  Id.  Plaintiff further posits

that Target did not provide a notice of termination containing the exact date of

[her] termination, [or] the exact date of cancellation of employee benefits."  Id. at

30 ¶ 166.

Plaintiff asserts that she "had never received any blame, disciplinary

action, or any warning against her within her scope of her employment prior to

the sexual harassment incident report."  Compl. at 13 at ¶ 55.  Plaintiff avers that

"Target, and its employees' intention was to retaliate against [her] for a sexual

harassment complaint, and force [her] to leave her employment."  Id. at 16 ¶ 78;

see id. at 23 ¶ 119.  She further posits that, "[f]rom April 6[], 2018[,] until [her]

termination [o]n December 15, 2018, [she] had suffered serious work-related

injuries, including but not limited to lumbar strain, and was diagnosed with

disabilities by her physicians," id. at 14 at ¶ 58, and that she was "terminated . . .

because of her health situation."  Id. at ¶ 64; see id. at 16 ¶ 74.  Moreover,

plaintiff states that, because "[d]efendants terminated [her] employment because

of [her] medical condition caused by an incident while performing her

employment, and because of complaint [sic] for sexual harassment made against

co-workers," "Target breached the implied covenant of good faith and fair dealing

under New York [l]aw."  Id. at 25 ¶¶ 132-33.  In addition, plaintiff states that she

"was a warehouse worker on March 13, 2018," and "was qualified to perform the

essential functions of a warehouse worker with or without accommodations," but

avers that "Target never proposed a reasonable accommodation to [her]" and

"never proposed . . . a vacant funded position."  Id. at 17-18 ¶¶ 84, 90-92.  She

also alleges that D'Aloia "told [her] that she should become a packager, because

that is where women were, and that [she] would feel more comfortable as a

packager."  Id. at 5 ¶ 14.  In July 2019, plaintiff filed a complaint against Target

with the Equal Employment Opportunity Commissioner ("EEOC") asserting

claims of sex and disability discrimination and retaliation.  See Dkt. No. 1-1 at 24.

On November 26, 2019, plaintiff received a right-to-sue letter from the EEOC.
See id. at 1.  Plaintiff commenced the present lawsuit by filing her complaint on
February 20, 2020.  See Compl.

## C. Analysis[5]

### 1. Title VII Claims Against Individual Defendants

To the extent that plaintiff asserts her Title VII claims against the individual
defendants, such claims must be dismissed because "individuals are not subject
to liability under Title VII."  Patterson v. Cty. of Oneida, New York, 375 F.3d 206,
221 (2d Cir. 2004) (internal quotation marks and citation omitted); see Mandell v.
Cty. of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) ("the district court's dismissal of
[the] plaintiff's Title VII claims against [the defendant] in his personal capacity
must be affirmed because under Title VII individual supervisors are not subject to
liability.").  Accordingly, it is recommended that plaintiff's Title VII claims, insofar
as asserted against the individual defendants, be dismissed with prejudice and
without leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for
failure to state a claim.

### 2. Sex Discrimination Under Title VII and the NYSHRL

---

[5]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have
been provided to plaintiff.

"Title VII makes it unlawful for an employer to discriminate against any individual based on that person's sex." Walsh v. New York City Hous. Auth., 828 F.3d 70, 74 (2d Cir. 2016) (citing 42 U.S.C. § 2000e-2(a)(1)).  Sex discrimination claims brought under NYSHRL are analyzed the same as sex discrimination claims brought under Title VII.  See Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 (2d Cir. 2010) ("We review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title VII discrimination claims.").  To state a cause of action for gender discrimination under Title VII and the New York State Human Rights Law, "a plaintiff must show (1) that she was a member of a protected group; (2) that she was qualified for the job in question; (3) that the defendant took an adverse employment action against her; and (4) that the circumstances support an inference of discrimination." Byerly v. Ithaca Coll., 290 F. Supp. 2d 301, 307 (N.D.N.Y. 2003) (citations omitted), aff'd, 113 F. App'x 418 (2d Cir. 2004) (summary order); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Here, plaintiff has sufficiently alleged that, as a woman, she is a member of a protected group under Title VII.  See 42 U.S.C. § 2000e-2(a)(1) (prohibiting employment discrimination on the basis of gender).  She has also sufficiently alleged that she was qualified for her position as a warehouse worker, see Compl. at 18 ¶ 90, and that Target took adverse employment action against her when her employment was terminated on December 15, 2018.  See Robinson v. Dibble, 613 F. App'x 9, 12 (2d Cir. 2015) (summary order) (noting that the

14

plaintiff's termination constituted "adverse employment action"); <u>Feingold v. New York</u>, 366 F.3d 138, 152 (2d Cir. 2004) (explaining that an "[e]xample[] of materially adverse employment action[ is] termination of employment.").  With respect to the fourth factor, plaintiff has failed to sufficiently allege facts to demonstrate either direct evidence of Target's discriminatory intent or that her termination occurred under circumstances that establish a plausible inference of sex-based discrimination.  See <u>Jones v. Target Corp.</u>, No. 15-CV-4672 (MKB), 2016 WL 50779, at *3 (E.D.N.Y. Jan. 4, 2016) (explaining that, "[i]n the absence of direct evidence of the decision maker['s] discriminatory intent, courts focus on whether a plaintiff's allegations support a 'plausible inference of discrimination.'" (quoting <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 87 (2d Cir. 2015)).

> "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."

<u>Littlejohn v. City of New York</u>, 795 F.3d 297, 312 (2d Cir. 2015) (internal quotation marks and citation omitted).  Plaintiff's complaint does not state any allegations regarding criticism of her performance in degrading terms, invidious comments about other women, or favorable treatment of male employees.  <u>See</u> <u>id.</u>; <u>see</u> <u>generally</u> Compl.  Rather, it appears that plaintiff attempts to establish an

inference of discrimination based on the sequence of events leading to her

termination, namely her purported filing of a complaint with Target's HR

department on May 30, 2018.  See Compl. at 6 ¶ 19, 13 at ¶ 55, 16 ¶ 78, 23 ¶

119.  However, plaintiff has not alleged any facts from which the Court can

plausibly infer that her termination was due to her sex or gender.  As discussed

below, to the extent that plaintiff alleges that she was terminated for filing her HR

complaint, her allegations in this regard are more properly assessed with respect

to her retaliation claim.  See subsection II.C.3.a, infra.  Further, her conclusory

allegation that male coworkers made certain comments and engaged in behavior

for the "sole purpose to intimidate [p]laintiff because [she is] a woman" is in no

way related to the adverse employment action of plaintiff's termination.  Compl.

at 28 ¶ 149.  Similarly, to the extent that plaintiff avers that she was treated

differently than other female employees at Target in Wilton, New York, because

Target's HR investigated other women's complaints of sexual harassment by

D'Aloia and not hers, her allegations do not plausibly suggest sex or gender

discrimination—because she does not allege that Target treated similarly

situated individuals outside of her protected class differently.  See Compl. at 8 ¶

26; see also Mandell v. Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)

(explaining that, "[a] showing of disparate treatment—that is, a showing that the

employer treated plaintiff less favorably than a similarly situated employee

outside his protected group—is a recognized method of raising an inference of

discrimination." (emphasis added) (internal quotation marks and citation

omitted)).  Therefore, the fact that Target's HR investigated "other female

employees[' sexual harassment claims]" does not plausibly suggest that Target

discriminated against plaintiff because she is a woman.  Compl. at 8 ¶ 26.  As a

final matter, to the extent that plaintiff alleges that D'Aloia "told [p]laintiff that she

should become a packager, because that is where women were, and that

[p]laintiff would feel more comfortable as a packager," plaintiff does not aver that

she was actually ever placed in a position as a packager and, therefore, does not

allege sufficient facts with respect to this purported comment to establish that an

adverse employment action was taken as a result of her sex or gender.  Id. at 5 ¶

14.  Thus, even affording the complaint the most liberal construction possible,

plaintiff has failed to plausibly allege claims for sex- or gender-based

discrimination pursuant to Title VII or the NYSHRL.  Accordingly, it is

recommended that these claims be dismissed without prejudice and with

opportunity to amend in light of plaintiff's pro se status.


### 3. Retaliation

**a. Retaliation Claims Against Target Under Title VII and the NYSHRL**

Title VII forbids an employer from discriminating against an employee

because the employee "has opposed any practice made an unlawful employment

practice by this subchapter, or because [s]he has made a charge, testified,

assisted, or participated in any manner in any investigation, proceeding, or

hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Similar to Title VII, the

NYSHRL makes it unlawful for an employer to retaliate or discriminate against an employee because she "has opposed any practices forbidden under [the NYSHRL] or because . . . she has filed a complaint, testified or assisted in any proceeding."  N.Y. EXEC. LAW § 296(7).

To state a claim for unlawful retaliation under Title VII or the NYSHRL, a plaintiff must advance non-conclusory allegations that (1) she engaged in protected activity; (2) the defendants were aware of the activity; (3) the defendants took adverse action against the plaintiff; and (4) there is a causal connection with the protected activity and the adverse action.  See Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 24 (2d Cir. 2014); see also Soloviev v. Goldstein, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (noting that, in order to state a valid claim under Title VII and the NYSHRL, a plaintiff must establish the same four factors).  To survive initial review, a "[p]laintiff . . . must at least allege facts that state a plausible claim for retaliation."  Garvey v. Childtime Learning Ctr., No. 5:16-CV-1073 (TJM/ATB), 2016 WL 6081436, at *4 (N.D.N.Y. Sept. 12, 2016) (citation omitted), report and recommendation adopted, No. 5:16-CV-1073 (TJM/ATB), 2016 WL 6072395 (N.D.N.Y. Oct. 17, 2016).

Here, plaintiff has adequately alleged that she engaged in protected activity by filing her complaint with Target's HR employee on May 30, 2018, which defendant Target was necessarily aware of, and that Target took adverse employment action against her by terminating her employment.  See Compl. at 6 ¶ 19.  However, even affording the complaint the most liberal construction

possible, plaintiff has failed to sufficiently allege that the adverse employment action of her termination was causally connected to her filing the HR complaint. "A plaintiff may establish causation either 'directly, through evidence of retaliatory animus directed against the plaintiff by the defendant,' or 'indirectly, by showing that the protected activity was followed closely by the discriminatory treatment.'" Farmer v. Shake Shack Enterprises, LLC, No. 19-CV-9425 (PAE), 2020 WL 4194860, at *13 (S.D.N.Y. July 21, 2020) (quoting Hicks v. Baines, 539 F.3d 159, 170 (2d Cir. 2010) (additional citation omitted)).

Here, the complaint is devoid of allegations of direct evidence, "such as 'an admission by the decisionmaker' that he or she made a decision by relying on an improper consideration, *e.g.*, 'I fired him because he was too old.'" Id. (quoting Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1185 (2d Cir. 1992). Further, the complaint does not plausibly allege causation indirectly based on a close temporal proximity between the filing of her HR complaint and her termination. See Hicks, 539 F.3d at 170; Farmer, 2020 WL 4194860, at *13. As alleged, plaintiff made her HR complaint on May 30, 2018—approximately six and a half months before she was terminated on December 15, 2018. See Compl. at 6 ¶ 19, 11 ¶ 41. Although there is no bright line rule defining the requisite temporal proximity between a protected activity and adverse employment action to establish causation, the Supreme Court of the United States has held that the temporal proximity "must be very close." Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal quotation marks and citation omitted).

19

"[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." Garrett v. Garden City Hotel, Inc., No. 05-CV-0962 (JFB/AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007); see Crosby v. McDonald's of Guilderland, LLC, No. 1:17-CV-1160 (MAD/DEP), 2018 WL 2077884, at *6 (N.D.N.Y. May 2, 2018) ("District courts have generally found . . . that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." (internal quotation marks and citation omitted). Thus, the approximately six-and-a-half-month period between plaintiff's protected activity and termination is far beyond the outer limit for establishing an inference of retaliatory animus based on temporal proximity. See Garrett, 2007 WL 1174891, at *21; Crosby, 2018 WL 2077884, at *6. In any event, plaintiff's supporting documentation indicates that she was terminated for repeatedly failing to come to work on time, remain on task, or comply with verbal and written warnings that such behavior, if it persisted, could result in her termination. See Dkt. No. 1-2 at 10-11, 13. Accordingly, it is recommended that plaintiff's retaliation claims against Target pursuant to Title VII and the NYSHRL be dismissed without prejudice and with opportunity to amend given plaintiff's pro se status.

### b. Retaliation Claim Against D'Aloia Under the NYSHRL

20

Unlike Title VII, the NYSHRL permits individual liability of "any person" for retaliatory acts regardless of whether the individual can be considered an employer.  See N.Y. EXEC. LAW § 296(7) (providing that it is "an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under the [NYSHRL]").  "Conduct protected by the NY[S]HRL includes an employee making a complaint of discrimination, either formal or informal, to a superior based on a reasonable belief that the underlying challenged actions for which the employee complains was a violation of the law."  Id. (citations omitted).

Construed liberally, the complaint alleges that, in June 2018, D'Aloia retaliated against plaintiff for filing her May 30, 2018 HR complaint by commenting to plaintiff that the "leggings [she] wore at work . . . would cause a human resources complaint," and making unwanted physical contact with plaintiff, including "put[ting] his hand on [p]laintiff's lower back to move [her] out of the way" of a forklift even though plaintiff "was not in the forklift's way."  Compl. at 6 ¶ 20, 7 ¶ 22.  Even affording the pleading a liberal construction, plaintiff has not sufficiently alleged that D'Aloia retaliated against her for filing a complaint with HR based on the foregoing comment and touching plaintiff's back.  As an initial matter, although plaintiff's filing a complaint with Target's HR is protected conduct, the complaint advances no allegations that D'Aloia was aware that plaintiff filed the HR complaint or that he made the comment about her leggings

21

or touched her lower back in retaliation therefor.  See id.; Rivera, 743 F.3d at 24.

Further, D'Aloia's alleged conduct does not appear to rise to the level of adverse

action this Court has found to constitute retaliation in the context of the NYSHRL.

Cf. Perez v. Ruby Tuesday, No. 6:16-CV-00795 (DNH/TWD), 2016 WL

10835987, at *2, *3 (N.D.N.Y. July 14, 2016) (recommending on initial review

that, the pro se plaintiff's NYSHRL retaliation claim against her manager proceed

where the plaintiff alleged that her manager "shoved her violently from behind" in

retaliation for the plaintiff's filing a discrimination complaint.), report and

recommendation adopted sub nom. Perez v. Ruby Tuesday, Inc., No. 6:16-CV-

795 (DNH/TWD), 2018 WL 626294 (N.D.N.Y. Jan. 30, 2018).  Accordingly, it is

recommended that plaintiff's NYSHRL retaliation claim insofar as asserted

against D'Aloia individually be dismissed without prejudice and with opportunity

to amend in light of plaintiff's pro se status.


### 4. Hostile Work Environment due to Sexual Harassment Under Title VII and the NYSHRL

"There are two types of sexual harassment claims [recognized under Title

VII]: (1) claims based on direct discrimination (also called *quid pro quo* sexual

harassment), and (2) claims based on a hostile environment due to sexual

harassment."  Bermudez v. City of New York, 783 F. Supp. 2d 560, 579

(S.D.N.Y. 2011) (citing Carrero v. New York City Hous. Auth., 890 F.2d 569, 577

(2d Cir. 1989)).  *Quid pro quo* sexual harassment, "occurs when an employer

alters an employee's job conditions or withholds an economic benefit because the employee refuses to submit to sexual demands." Carrero, 890 F.2d at 577. The second type, sexual harassment based on a hostile work environment, "occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" Id. (quoting Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 65, (1986)); see Wessinger v. OSI Rest. Partner's LLC, No. 5:14-CV-00175 (MAD/TWD), 2014 WL 5168702, at *8 (N.D.N.Y. Oct. 14, 2014) ("Sexual harassment under Title VII includes actions based on a hostile environment.").

To state a claim for sexual harassment based on a hostile work environment under Title VII,

> a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex.

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks, citations, and ellipsis omitted). "A hostile work environment claim premised on sexual harassment is reviewed according to the same standard under the NYSHRL." Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (citing Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 n. 2 (2d Cir. 2010)).

Even affording the complaint the most liberal construction possible, plaintiff's allegations fail to sufficiently state a claim for sexual harassment under either Title VII or the NYSHRL.  Plaintiff alleges that male coworkers made fun of her, laughed at her, and made comments to her which caused her to feel uncomfortable and cry.  See Compl. at 4-6 ¶¶ 13, 17.  In particular, she contends that non-party Eucyer made comments to her after she declined to "hang out" with him, which included calling her "boring" and saying that "she was a cat lady," that "she should knit him a sweater," and that she "liked attention."  Id. at 4 ¶ 13. Moreover, plaintiff states that non-party Hickok called her a "garage."  Id. at ¶ 15. In addition, plaintiff alleges that non-party Ward informed her that D'Aloia "told him that '[p]laintiff should suck his D . . . .'"  Id.  These comments, although unprofessional, amount to, at most, "mere offensive utterance[s]" not actionable under Title VII or the NYSHRL.  Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

Plaintiff's contentions that that D'Aoia made unwanted physical contact with her, including touching plaintiff's lower back and shoulders; and that he "stared at [p]laintiff's chest" and would "appear from nowhere behind [p]laintiff" while she was working," are insufficient to establish a claim for sexual harassment.  Compl. at 5 ¶ 17; See Wessinger, 2014 WL 5168702, at *8 (holding that the plaintiff's allegations that her supervisor "gave her a back and shoulder rub shortly after she began her employment" and one other occasion failed to plausibly suggest "sexual harassment severe or pervasive enough to alter the

24

conditions of her employment and create an abusive working environment."); see also Lamar v. NYNEX Serv. Co., 891 F. Supp. 184, 185 (S.D.N.Y. 1995) (holding that allegations that the plaintiff's supervisor touched her hand, said she looked "hot," and stared at her were "too mild and innocuous to constitute sexual harassment as a matter of law" under Title VII).  Further, plaintiff's contentions that D'Aloia "made unwelcome sexual comments about [her] appearance" "almost every time [p]laintiff would report to work," are similarly deficient.  Compl. at 5 ¶ 17.  Plaintiff's claim in this regard is wholly conclusory in that it omits any factual detail about the alleged comments.  See Gray v. Onondaga-Cortland-Madison BOCES, 5:16-CV-973 (GLS/TWD), 2018 WL 1804694, at *2 (N.D.N.Y. Apr. 13, 2018 (holding that, in order to state a claim for sexual harassment, "[t]he impermissible character of the underlying conduct must be stated in order to permit an inference that it rises to the level of sexual harassment," and concluding that the plaintiff's "vague[]" and "conclusory" allegations of "unspecified conduct" failed to sufficiently allege a claim of sexual harassment in violation of Title VII).

Moreover, plaintiff's numerous allegations concerning the leggings she wore to work are also insufficient to state a claim for hostile work environment based on sexual harassment.  Plaintiff states that Eucyer told her "that her leggings were too tight" and that she "wore leggings because she wanted all the guys to look at her behind"; that D'Aloia stated that her "leggings . . . would cause a human resources complaint"; and that non-party Ward informed her that non-

party co-workers Namtrah and Duell were "walking behind [p]laintiff, trying to read [her] underwear through her black leggings."  Compl. at 4 ¶ 13, 6 ¶ 20, 7 ¶ 23.  These alleged comments and isolated instance of conduct are insufficient to support plaintiff's sexual harassment claims.  See Spina v. Our Lady of Mercy Med. Ctr., No. 97-CV-4661(KTD), 2003 WL 22434143, at *3 (S.D.N.Y. Oct. 23, 2003) (holding that a supervisor's comment that the plaintiff "looked good in tight pants" and his conduct of staring at the plaintiff, among other things, were not sufficiently severe or pervasive to constitute a hostile work environment), aff'd, 120 F. App'x 408 (2d Cir. 2005), cert. denied, 546 U.S. 905 (2005); Lucas v. S. Nassau Cmtys. Hosp., 54 F. Supp. 2d 141, 147-49 (E.D.N.Y. 1998) (denying hostile work environment claim where a supervisor touched the plaintiff multiple times, asked about the color of the plaintiff's underwear, and suggested on one occasion that the plaintiff wanted to "go to bed" with her).  Based on the foregoing, it is recommended that plaintiff's hostile work environment/sexual harassment claims be dismissed without prejudice and with opportunity to amend in light of plaintiff's pro se status.

### 5. Disability Claims Under the ADA and the NYSHRL

Liberally construed, the complaint appears to allege both discrimination and failure to accommodate claims pursuant to the ADA.  See Compl. at 9 ¶ 33, 14 ¶ 64, 16 ¶ 74.  To state a claim for discrimination under the ADA, a plaintiff must establish that "(1) her employer is subject to the ADA; (2) she is disabled

within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without accommodation; and (4) she suffered an adverse employment action because of her disability." Harvin v. Manhattan & Bronx Surface Transit Operating Auth., 767 F. App'x 123, 127 (2d Cir. 2019) (summary order) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)).

"An employer may [also] violate the ADA by failing to provide a reasonable accommodation" for an employee's disability. Dominelli v. N. Country Acad., No. 1:16-CV-203 (MAD/CFH), 2016 WL 6833992, *2 (N.D.N.Y. Nov. 18, 2016) (quoting McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013)). To state a claim under the failure to accommodate framework, a plaintiff must show that

> "(1) [p]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

Harvin, 767 F. App'x at 126 (quoting McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009)).

The ADA's definition of "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(1). "Major life activities" include, among other things, "performing manual tasks, . . . lifting, bending, . . . and working." 42

U.S.C. § 12102(2)(A).  However, "[t]he mere presence of a medical condition

does not establish that a plaintiff is disabled."  O'Donnell v. King B 100, LLC, No.

1:14-CV-1345 (TJM), 2016 WL 7742779, *9 (N.D.N.Y. May 3, 2016) (citations

omitted).  "In addition, it is well settled that temporary impairments with little or no

long-term permanent impact are not disabilities under the ADA."  Id. (citations

omitted).  Temporary, or "transitory," impairments are "impairment[s] with an

actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B); see

Hernandez v. Int'l Shoppes, LLC, 100 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) ("An

individual cannot be regarded as disabled under the ADA where the impairment

is transitory and minor." (citing 42 U.S.C. § 12102(3)(B))).  The NYSHRL defines

"disability" as:

> (a) a physical, mental or medical impairment resulting
> from anatomical, physiological, genetic or neurological
> conditions which prevents the exercise of a normal
> bodily function or is demonstrable by medically
> accepted clinical or laboratory diagnostic techniques or
> (b) a record of such an impairment or (c) a condition
> regarded by others as such an impairment, provided,
> however, that in all provisions of this article dealing with
> employment, the term shall be limited to disabilities
> which, upon the provision of reasonable
> accommodations, do not prevent the complainant from
> performing in a reasonable manner the activities
> involved in the job or occupation sought or held.

N.Y. EXEC. LAW § 292(21)(a)-(c).

Here, plaintiff alleges that she "was hurt" at work on April 15, 2018, when

"reached out with her left arm" to pick up a box containing four bleach bottles,

which she reported to D'Aloia.  Compl. at 7 ¶ 24.  However, plaintiff does not

proffer any further factual details about the duration or severity of this purported injury. See id. Rather, plaintiff alleges that she "re-injured her left side . . . during a yoga class after work" on August 6, 2018, which she reported to Workers' Compensation. Id. at 8 ¶ 25. Again, plaintiff does not provide any facts concerning the severity or duration of this alleged injury. See id. Further, plaintiff posits that she suffered a chest muscle strain while working on August 13, 2018, for which see sought medical attention. See id. at 27. Plaintiff states that Target's physician, Dr. Williams, "completed Target's Accommodation Questionnaire and restricted [p]laintiff to light duty for the following two weeks." Id. at ¶ 27. Plaintiff does not allege that this injury persisted beyond the two-week period mentioned in Dr. William's assessment. See generally Compl. Finally, plaintiff states that she sustained a lumbar strain at work on December 1, 2018, and was "advised to be on light duty until December 5, 2018." Id. at ¶ 34; see Dkt. No. 1-2 at 16 (Malta Med Emergent Care Return to Work/School Release dated 12/2/18, stating, "No gym/sports until seen by PMD/Specialist?" and "Shantoy should be on light duty for the next 3 days."). She states that she "was ruled partially disabled" on December 1, 2018." Id.

Even liberally construing the complaint, plaintiff alleges, at most, only transitory impairments and, therefore, fails to state a claim for either disability discrimination or failure to provide reasonable accommodations under the ADA or the NYSHRL. Indeed, injuries of longer duration are routinely found to be transitory for purposes of assessing ADA claims. See Guary v. Upstate Nat'l

Bank, 618 F. Supp. 2d 272, 275 (W.D.N.Y. 2009) (holding that the plaintiff, who

broke her ankle resulting in a single, twelve-week disability leave with no alleged

physical limitations thereafter, was not disabled under ADA or "the parallel New

York statute"); see also O'Donnell, 2016 WL 7742779, at *9 (holding that the

plaintiff's injuries resulting from a motorcycle accident did not constitute "a

disability within the meaning of the ADA and/or the [NYS]HRL" where the injuries

"required little or no treatment, and which, aside from limiting his ability to walk

quickly following the accident, did not otherwise limit his physical abilities.");

Shaughnessy v. Xerox Corp., No. 12-CV-6158T (MAT), 2015 WL 1431687, at *3

(W.D.N.Y. Mar. 27, 2015) (finding that an ankle sprain which permitted the

plaintiff to return to work after approximately one month was not a disability within

the meaning of the ADA); Mastrio v. Eurest Servs., Inc., No. 13-CV-00564 (VLB),

2014 WL 840229, at *6 (D. Conn. Mar. 4, 2014) (dismissing ADA discrimination

claim because the plaintiff failed to allege he suffered a limitation of major life

activities during the one-month period he was recovering from kidney stone

operation).  Thus, plaintiff has failed to sufficiently allege a cause of action for

disability discrimination or failure to provide reasonable accommodations under

the ADA or NYSHRL.[6]  Accordingly, it is recommended that these claims be

---

[6]  To the extent that plaintiff conclusorily states that she was "demoted . . . because of [her] medical condition" and that her request to be "accommodated and work overtime while injured" was denied, the complaint is devoid of any factual support for these allegations.  Compl. at 7 ¶ 22, 16 ¶ 74.  Therefore, plaintiff has not sufficiently pleaded that she suffered an adverse employment action based on these allegations.  See Dowrich–Weeks v. Cooper Square Realty, Inc., 535 F. App'x 9, 12 (2d Cir. 2013) (summary order) (affirming the district court's finding that the plaintiff, complaining of gender-based discrimination, had failed to sufficiently plead an adverse employment action because she "allege[d] no facts supporting her conclusory assertion that she was 'demoted.'"); Henry v. NYC Health & Hosp. Corp.,

dismissed without prejudice and with opportunity to amend in light of plaintiff's pro se status.

### 6. Contract Claim

Plaintiff states that her termination "violated the implied covenant of good faith and fair dealing in the course of performance."  Compl. at 24 ¶ 129.  Plaintiff provides no other information or context for this claim.  It appears that plaintiff seeks to bring a contract claim under New York State common law. See id.  As it is currently alleged in the complaint, plaintiff's potential contract claim must fail.  Plaintiff appears to have been an at-will employee.  "'It is still settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.'" Mycak v. Honeywell, Inc., 953 F.2d 798, 801 (2d Cir. 1992) (quoting Sabetay v. Sterling Drug, Inc., 506 N.E.2d 919, 920 (N.Y. 1987)).  Indeed, plaintiff does not allege that she was employed pursuant to an enforceable employment contract.  See generally Compl.  Accordingly, as plaintiff fails to set forth a claim for a breach of the covenant of good faith and fair dealing, it is recommended that this claim be dismissed with prejudice, but without prejudice to plaintiff seeking to address this claim in state court should she wish to do so.

---

18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) (holding that the plaintiff's "conclusory allegation that she was denied overtime, without more, [wa]s insufficient to substantiate an adverse employment action.").

The undersigned reaches no conclusion as to the success or merits of this potential claim.

### 7. New York Labor Law § 195

New York Labor Law § 195 provides that

> Every employer shall: notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination.  In no case shall notice of such termination be provided more than five working days after the date of such termination.  Failure to notify an employee of cancellation of accident or health insurance subjects an employer to an additional penalty pursuant to section two hundred seventeen of this chapter.

N.Y. LAB. LAW § 195(6).  Section 217 provides, in relevant part,

> where the failure to comply involves . . . the failure to provide an individual with notice of termination pursuant to [Section 195(6)] of this chapter, the policy holder shall also be liable, in a civil action brought by the individual entitled to receive the notice of termination or exercise the right to continuation of coverage in a court of competent jurisdiction, to appropriate damages which shall include reimbursement for medical expenses which were not covered by the policyholder's insurer by virtue of his termination of the policy or failure to remit such premiums.

N.Y. LAB. LAW § 217(7)(b).

Here, plaintiff states that Target violated New York Labor Law § 195 because she "was not provided a letter of termination within five days of her termination," "did not take any precaution to inform [p]laintiff of her termination

32

within five days thereof," and "did not provide a notice of termination containing the exact date of [p]laintiff's termination, and the exact date of cancellation of employee benefits."  Compl. at 11 at ¶ 41, 30 ¶¶ 164, 166.  However, because the undersigned is recommending dismissal of plaintiff's Title VII and ADA claims, the undersigned declines to reach the merits of plaintiff's New York Labor Law § 195 claim.  It is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's New York State Labor Law § 195 claim, without prejudice and subject to refiling in state court and to reconsideration by the District Court in the event plaintiff is granted leave to file an amended complaint and does submit an amended complaint that states a claim under Title VII and/or the ADA.

### III. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND**[7]; and it is further

---

[7]  Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect."  International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp., 434 U.S. 1014(1978); see also Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, any amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action.

**RECOMMENDED**, that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims without prejudice and subject to refiling in state court and to reconsideration by the Court in the event plaintiff is granted leave to file an amended complaint and does submit an amended complaint that states a claim under Title VII and/or the ADA[8]; and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint, (1) it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court, and (2) the matter be returned to the Magistrate Judge for service of the original complaint for any claims that were permitted to proceed in the original complaint, with all other claims deemed stricken.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE**

---

[8]  The undersigned makes no finding as to whether plaintiff can properly proceed on these claims in state court.

**REVIEW**. <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989)); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[9]

        Dated: September 1, 2020
        Albany, New York

                        Christian F. Hummel
                        U.S. Magistrate Judge

---

[9] If you are proceeding <u>pro se</u> and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  <u>Id.</u> § 6(a)(1)(c).